1          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF KENTUCKY
2              LOUISVILLE DIVISION

3
UNITED STATES OF AMERICA,      )   Case No. 3:22-CR-00059-DJH
4                              )
           Plaintiff,          )
5                              )
v.                             )
6                              )
ANGEL MARTIN,                  )
7                              )   September 27, 2023
           Defendant.          )   Louisville, Kentucky
8

9                      * * * * *

10          TRANSCRIPT OF SENTENCING HEARING
           BEFORE HONORABLE DAVID J. HALE
11           UNITED STATES DISTRICT JUDGE

12                     * * * * *

13   APPEARANCES:

14   For United States:     Bryan R. Calhoun
                            U.S. Attorney's Office
15                          717 West Broadway
                            Louisville, KY 40202
16
     For Defendant:         Patrick J. Renn
17                          Smith & Helman
                            600 West Main Street, Suite 100
18                          Louisville, KY 40202

19
     [Defendant present.]
20

21
                        Dena Legg, RDR, CRR, CCR-KY
22                       Official Court Reporter
                          208 U.S. Courthouse
23                       Louisville, KY 40202
                           (502) 625-3778
24
     Proceedings recorded by certified stenographer, transcript
25   produced by computer.

1      (Begin proceedings in open court at 1:37 p.m.)

2           DEPUTY CLERK:  We are going back on the record in the

3    matter of United States v. Angel Martin, Criminal Action

4    Number 3:22-CR-59 for a sentencing hearing, Judge.

5           MR. CALHOUN:  Bryan Calhoun for the United States.

6    Good afternoon, Your Honor.

7           MR. RENN:  Good afternoon, Your Honor.  Patrick Renn

8    and standing next to me here is Angel Martin.

9           THE COURT:  Good afternoon.  We're here for a

10   sentencing hearing, as has been indicated.  And, Mr. Renn, have

11   you and Mr. Martin received and reviewed the presentence

12   investigation report?

13          MR. RENN:  Yes, Your Honor, we have and we did.

14          THE COURT:  Mr. Martin, have you had enough time to go

15   through the PSR with Mr. Renn?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Do we have any objections to take up?

18          MR. CALHOUN:  None from the United States.

19          MR. RENN:  No, Your Honor.  I'm gonna fashion this

20   later, as we go through the argument, as to a reason for a

21   variance.  But, again, I think the report is accurate as filed.

22          THE COURT:  Very well.  I will then adopt the PSR

23   without objection.  It will be filed under seal in the record.

24   In the event of an appeal, the parties, court, and counsel will

25   of course have access to it.

1    Let's then discuss the guideline calculations contained in

2    the PSR.  The calculations begin on page 7 in paragraph 27.

3    Paragraph 28 notes that the two counts are grouped for

4    guideline calculation purposes under Guideline 2B1.1, and that

5    guideline will be utilized then upon the grouping.

6    The base offense level is a 6 under subpart (a)(2) of the

7    guideline, as is noted in paragraph 29.  There are ten levels

8    added in paragraph 30 because the loss here exceeded 150,000 but

9    is less than 250,000.

10    Another two levels are added because the offense involved

11    ten or more victims.  That's under subpart (b)(2)(A)(ii).  And

12    then because of that -- I believe it's called an arrow key that

13    the defendants possessed -- there is a further increase of two

14    levels as noted in paragraph 32.

15    Paragraph 35 adds still two more levels because of the

16    substantial risk of death or serious bodily injury that was

17    caused when the defendants attempted to flee from law

18    enforcement at the time of their arrest, as is noted, I believe,

19    in paragraph 15, set out in more detail in paragraph 15 of the

20    PSR -- no, not 15.

21    MR. RENN:  35, I think.

22    THE COURT:  Well, we're in 35, but I'm --

23    MR. CALHOUN:  15 on page 6.

24    THE COURT:  I'm looking for the -- I might have just

25    written the wrong note down.  I'm looking for the offense

1    conduct section that deals with the pursuit.  Oh, no, it was 15.

2              MR. RENN:  You are correct.  It is 15, Your Honor.

3              THE COURT:  I need to read a little more carefully

4    there.  It is 15, yes.

5         So we get to an adjusted offense level of 22.  After

6    crediting the acceptance of responsibility credits -- and I

7    presume the Government now moves for the third level.

8              MR. CALHOUN:  We so move, Your Honor.

9              THE COURT:  That results in a total offense level of

10   19.  Mr. Martin's criminal history is minimal and scores in

11   Category I.  That means that with an offense level of 19 against

12   that Category I, the guidelines suggest a custody sentence of

13   between 30 and 37 months, supervised release to follow of

14   between one and three years, and a fine range of 10,000 to

15   $100,000.

16        I'll ask counsel now to confirm that the guidelines that

17   I've just outlined are consistent with what is in the PSR.

18             MR. CALHOUN:  The United States would confirm that and

19   not object.

20             MR. RENN:  On behalf of Mr. Martin, we agree, Your

21   Honor.

22             THE COURT:  So any motions to take up?

23             MR. CALHOUN:  No other motions other than the extra

24   point for acceptance.

25             MR. RENN:  No, Your Honor.  We would be asking for a

1    variance.  And we're happy to address that at any time that you

2    want to --

3              THE COURT:  Let's go ahead, then.

4              MR. RENN:  Yeah.  Your Honor, first, as to the

5    guidelines, again, I did not file an objection.  And I certainly

6    understand where the probation officer in filing the presentence

7    report came up with that additional two points mentioned by the

8    Court in paragraph 35 under the guideline calculation.  And

9    there is this adjustment under USSG 3C1.2, and that's where the

10   defendant recklessly created a substantial risk of death or

11   serious bodily injury to another person in the course of fleeing

12   from law enforcement.

13     As the Court noted, paragraph 15 is the one that has the

14   offense conduct for that particular enhancement.  And as noted

15   here, the vehicle fled and this was after law enforcement had

16   spotted the vehicle and identified it and made -- tried to make

17   a stop and that during which time the Corolla intentionally

18   rammed a Jeffersontown Police Department vehicle.

19     Again, just ramming the vehicle in and of itself, or fleeing

20   in and of itself, does not qualify for that enhancement.  It

21   actually does have to be that you recklessly create a

22   substantial risk of death or serious bodily injury to another

23   person.

24     In looking at the uniform citation that was actually filed

25   by the Jeffersontown Police Department as to this particular

1    incident, they described this as "During a pursuit, the suspect

2    vehicle intentionally struck Officer Colebank's marked vehicle,

3    causing property damage and possible injury to officer."  So

4    there's nothing about this -- you know, certainly substantial

5    risk of death or serious bodily injury.  Again, the officer's

6    own report says "damage to the vehicle and possible injury to

7    the officer."

8        So that's certainly my view is it's very questionable as to

9    whether the two points apply -- or should be applied at all.

10   But the one thing I didn't want to have to do is have officers

11   come in here and testify about this particular conduct when I

12   think the Court can consider it as part of fashioning a sentence

13   in this case.

14       And, obviously, under 3553(a), the guidelines are gonna be

15   one of the factors that the Court is gonna consider under those

16   seven factors.  And the Court is to sentence Mr. Martin, as all

17   defendants, to a sentence that is sufficient but not greater

18   than necessary to satisfy the policies of the statute.

19       Looking first at the nature and circumstances of this

20   particular crime, more often than not what we see down here, or

21   as I certainly see in my practice, are drugs and guns, crimes of

22   violence, and we don't have that here in this case.  It is an

23   offense against the property.  It's a financial crime, a crime

24   of greed trying to get money.

25       We do recognize it's a very serious offense and certainly

1    causes the public to have lost faith in the postal system, an

2    essential government office, and that this was repeated conduct.

3    It wasn't a one-time thing.  So, you know, we do recognize,

4    again, the seriousness but, again, taking a look at this as an

5    offense against property as compared to against individuals.

6        And then more importantly, mitigating that offense with the

7    characteristics of this particular person standing before the

8    Court, you've got a young person, 25 years of age.  As the Court

9    noted, he has very limited criminal history.  In fact, just one

10   criminal history point, and that was for a marijuana charge

11   where he received a probated sentence.  But for that one point

12   as of November of this year, he would qualify for a two-level

13   reduction under his guidelines because he would have a zero

14   criminal history as well as a Criminal History Category Number

15   I.

16       He does have a good education.  He graduated from high

17   school.  More importantly, he's got a good work history.

18   According to the report, he worked at Walmart for some two years

19   and then worked at the White Castle before that for another year

20   and a half.  So he's got that ability to work and support

21   himself, support his family.

22       He does have a long-time girlfriend that he's been with.

23   They've got two children, according to the report, ages 4 and 3.

24   His mother basically raised him along with her husband,

25   Mr. Martin's stepfather.  He has three siblings.  They grew up

1  in a rough neighborhood.

2      But, again, despite those facts -- and the dad was in prison

3  for the first 14 years of his life.  Despite those facts, again,

4  he was able to graduate high school, get a job, support himself

5  and do so quite well, not where you're going one place for six

6  weeks and go to another one for a month and someplace else.  He

7  was able to go and work continuously at two different places for

8  almost four years, and I think that is very significant.

9      As to his physical and mental condition, physically he's in

10  good shape.  He does talk about having some issues with respect

11  to depression, and he did self-report a very significant

12  substance abuse problem with prescription drugs and even codeine

13  and was taking those daily right up to the time of his arrest in

14  this particular case.

15      Of note is, despite having a good education, Mr. Martin did

16  say that he would like the opportunity to get additional

17  vocational training while incarcerated at the Bureau of Prisons

18  and that also he did believe that he would benefit from

19  substance abuse treatment.  And that's one of the things that we

20  see more often than not that brings somebody back before the

21  court for violations of probation or supervised release is an

22  issue with respect to controlled substances/alcohol.  And,

23  again, he recognizes that and wants to better himself.

24      So those are all, I think, you know, good factors for him

25  personally as to his history and his character.  And then you

look at these other factors that the Court's got to consider, the need for this sentence to reflect the seriousness of the offense -- and, again, we certainly recognize it's serious -- promote respect for the law, provide a just punishment to afford adequate deterrence to criminal conduct generally.  And I think if somebody sees that -- you know, in state court this would probably be a probatable offense.  Here somebody going out stealing mail ends up going to the penitentiary, I think that is gonna be general deterrence.

And then to protect the public from more crime from this individual -- he's young.  He's 25.  He's gonna have every opportunity to go out and commit new offenses.  But, again, based on the fact that he recognizes getting vocational training, you know, as a barber or construction worker, that that's gonna benefit him, I think, bodes well to say this is an opportunity for him to learn and not be back before the court.

As to the sentences that are available, he actually is available for a sentence of probation under the statute, which we don't see a whole lot down here.  And too often we go right to the guidelines and start talking about somebody and how much imprisonment they ought to get when the statute says look first at all these same factors, the 3553 factors, and say consider probation.  And the Court could certainly sentence him to probation.  He's been in custody now for quite some time.

And it isn't that he gets a pass if he gets placed on

1    probation.  The fact is that probation can be up to five years,

2    and a condition of that is that he serve some time on house

3    arrest.  And then if you violate, he's back before the court,

4    not just on this offense where he would be looking at whatever

5    the court could give him under the present situation, but he

6    would also be facing whatever new charges would be out there.

7        The other thing that the Court can consider is a split

8    sentence.  You saw that back in the good old days under the

9    guidelines when they first came.  If you were in Zone C and you

10   were looking at 10 to 16 months, 5 in or 8 in and the other 5 or

11   8 on house arrest.

12       There's been a new push -- looking at it now, it costs

13   $44,000 to house somebody in a federal prison that -- as a

14   condition of supervised release, this is a sentence of custody

15   under the law.  So what the Court can do is give a split

16   sentence and give a certain amount of time in the Bureau of

17   Prisons right now.  And then also as a condition of supervised

18   release, again, recognizing that that house arrest is custody,

19   put the remainder of that sentence on house arrest while the

20   person serves supervised release, again, under the supervision

21   of the probation office.  So the Court has a whole host of

22   things in front of it, not just the guidelines themselves.

23       And then looking at the need for unwarranted disparity among

24   defendants with similar records, similar conducts, convicted of

25   similar crimes, in this case here -- the presentence reports are

1  now including this judicial information.  And according to the

2  information that's cited here for the Court, that the average

3  sentence for somebody with this offense level of 19 and with a

4  Criminal History Category I, it isn't the 30 months that would

5  otherwise perhaps be called for, that the average length of

6  imprisonment is 22 months.  And this is under the judicial

7  sentencing information that's set forth in paragraph 69 of the

8  report.

9      So the Court does have a lot of options before it, and we

10 would ask for a split sentence.  But if the Court is unwilling

11 to do that, then, again, based on the fact that maybe this two

12 levels should not have otherwise applied, that there wasn't this

13 substantial risk of death or substantial bodily harm, that

14 recognizing that variance is out there, we would ask for a

15 sentence not greater than 22 months.

16      MR. CALHOUN:  Yes, Your Honor.  First, I guess I'll

17 address the enhancement for endangering the police officers.  I

18 think ramming a police car with an officer inside of it speaks

19 for itself.  It's certainly foreseeable there could be serious

20 injury to somebody.  So I'll just leave that at that.  That's

21 about as dangerous as it gets.

22      Addressing the sentencing factors -- they're laid out in the

23 PSR.  I'm not gonna belabor them but would note this was an

24 ongoing offense that occurred five, six, seven months in which

25 they came from another state to our district to commit a crime,

1   presumably for the only purpose of committing a crime in our

2   district.  They were traveling to Louisville to commit a crime,

3   in part a crime that relies on the public trust, that is, the

4   mail getting delivered, taking advantage of that with an arrow

5   key.

6       It is a serious offense.  It was compared to other financial

7   offenses.  Every case is different.  I would contend that this

8   one is unique in and of itself in the duration and the nature of

9   it and the travel they made.

10       Regarding the terms of both general and specific, first the

11   general.  I touched on it a second ago.  This is a case that

12   begs for general deterrence so that other people don't feel

13   inclined to take advantage of what is an easy target, stealing

14   United States mail, and then turning around and forging checks

15   and trying to cash them.  It's something that's out there and

16   available to do and pretty easy to do.  So general deterrence, I

17   think, is particularly important in this case.

18       Specific deterrence.  He's 25 years old.  I would agree that

19   his criminal history didn't calculate high, although I would

20   also note that his criminal history is not super clean on top of

21   that based on previous troubles.  None of it resulted in

22   convictions or resulted in a guideline increase.  There were

23   charges that were dismissed, things like that.

24       His job history was noted in there.  He said he had two

25   years at Walmart, which is commendable if he did that.  It was

1    kind of vague otherwise.  I'm not really sure what his true job

2    history is.  It was reported that he had a couple years working

3    at Walmart.

4         And, finally, the JSIN data, as the Court well knows, it is

5    calculated based on the 2B1.1 guideline kind of standing alone,

6    which is a very broad way to sort of categorize that.  I don't

7    believe it specifically is narrowing it down to this specific

8    type of offense.  It would be all fraud offenses that are

9    occurring under 2B1.1.

10        As the Court, I think, is well aware, at least in my

11   experience there's a lot enhancements that apply to this one

12   that would not necessarily apply to your typical embezzlement

13   case that the Court sees in 2B1.1.  So I would say this one is a

14   little outside the range of that because of the way the

15   guidelines interacted with it.  And for that reason, the plea

16   agreement said we would recommend a low end sentence.  We are

17   recommending a low end sentence, which is 30 months in prison.

18        And, also, as we noted with this -- the previous defendant,

19   Mr. King, we were provided a couple checks late from one of the

20   victims.  We would be submitting a -- asking the Court for more

21   time to resolve restitution in the case.

22             THE COURT:  You're aware of that?

23             MR. RENN:  Taking that first, Your Honor, I would

24   object.  It's my understanding they just got that information

25   within the past couple days.  And under the statute, Congress

1    spoke of that particular issue and gave the Government and more

2    importantly any victims a window of opportunity in which to make

3    such requests.  And that window of opportunity, pursuant to 18

4    U.S.C. Section 3664, subsection (5) is ten days prior to

5    sentencing.  And this statute says, "if the victim's losses are

6    not ascertainable by the date that is 10 days prior to

7    sentencing, the attorney for the Government or the probation

8    officer shall so inform the court, and the court shall set a

9    date for final determination."

10       That has not been done in this case, and this is certainly

11   mandatory under the statute.  So if restitution is mandatory

12   under that statute, you certainly got to go and follow each one

13   of the subsections.

14       And, again, this conduct goes back to -- I think it was June

15   2022.  And there was some kind of agreement between the alleged

16   victim in this case and its bank.  These checks were June the

17   2nd, 2022, that they're talking about, three checks in the

18   amount of $24,592.25.  So they certainly were on notice of this.

19       And then whatever this agreement is as to the bank, this

20   Dennis Branson, the CFO of Alpha Leasing writes "Our bank

21   reimbursed us" -- so it isn't -- they got reimbursed by the bank

22   -- "half of the $73,775.75 that we were out for three checks."

23       So now we have a loss of $36,888.37, not the 73,000 that is

24   talked about here, the additional $50,000 that the Government

25   referenced.  "Our bank had an equal loss of $36,888.37.  We

discussed the restitution with our bank and told them we would

ask for the whole amount and give them 50 percent of whatever

was recovered."

So whenever they had this discussion with the bank, the bank

certainly recognized it was on the hook because, when you look,

they got some other checks in here.  The bank, under the Uniform

Commercial Code or the banking code -- I guess it's Article 9 of

the Uniform -- I'm going back to law school.  But of the Uniform

Commercial Code -- I think it's Article 9 -- they have to know

their customer.  They have to know their signatures, and the

signatures on these are certainly not the same.

There's a whole bunch of different banks; and so the bank

was on the hook.  The bank was liable.  They worked out a deal.

And the bank recognized they were in trouble, so they agreed to

reimburse their customer.  They probably should have had to

reimburse the entire amount, but they -- you know, they settled

on half.

But whenever this agreement was done, it certainly was done

outside of, you know, my knowledge and probably the assistant

U.S. attorney's and not within ten days.  And there was no

notice given by the attorney for the Government to the Court or

the probation officer to give that.  So we would object to

anything over and above the 148,000 and change that we

previously agreed to.

As to this spotty work history and, you know, whether we

1    really worked at Walmart or not, it is Walmart for two years.

2    It's White Castle for a year and a half; and the information was

3    corroborated and verified by Mr. Martin's grandmother.  So it

4    isn't just spotty.  He told the probation officer.  The officer

5    would have had an opportunity to verify those records.  She

6    chose to corroborate with the grandmother, and the grandmother

7    did so.

8        And as to, you know, whether this would be something out of

9    the ordinary, again, I would say it's out of the ordinary

10   against us because we're looking at a loss amount of between

11   150,000 and 250.  So six plus that 10 is 16.  We're getting the

12   two points for, you know, more than 10 victims.

13       A lot of times the fraud occurs -- if I'm gonna go and steal

14   from my employer, there's one victim.  So when you're looking

15   about those averages and the judicial information that's out

16   there, I think it would be skewed that we're getting two points

17   higher because of the more than ten victims.

18       Secondly, the Court said about having the key, and that's --

19   you know, the key to the receptacle, and that's where the

20   additional two points came from was actually from the

21   counterfeit checks being falsified and being changed.  That's

22   where that authentication feature came.  So, again, most -- or

23   not most, many frauds don't include that.  It's simple

24   embezzlement.

25            THE COURT:  I think you're actually right.  That

1    involves the washing of the stolen checks.

2           MR. RENN:  Yes.  Again, we've got another two points

3    there that a simple embezzlement isn't going to have that.

4           THE COURT:  Right.  I don't really see a lot of value

5    here, Mr. Renn, in going back and rearguing the guidelines.

6    There were no objections to the guidelines.  We've gone through

7    them.  I understand your arguments.

8           MR. RENN:  Well, Your Honor --

9           THE COURT:  Let's talk though about restitution

10   because that is the salient issue which was the start of your

11   discussion.  I'm not sure that 3664(d)(5) helps you very much.

12   This is a somewhat flexible subpart of the statute, and it reads

13   that "If the victim's losses are not ascertainable by the date

14   that is 10 days prior to sentencing, the attorney for the

15   Government (the assistant U.S. attorney) or the probation

16   officer" -- it just says "shall so inform the court."  And then

17   the Court's responsibility, upon being informed, as the

18   prosecutor informed me here in open court just a few minutes

19   ago, is to set a date for the final determination not to exceed

20   90 days after sentencing.  So there is a pretty flexible time

21   period built in for 90 days from today, and they certainly

22   cannot take longer than that to finalize the number.

23      The number also does not impact the enhancement that is set

24   out in paragraph 30, that plus 10 that you were just talking

25   about.  It doesn't change that.  It does change the overall loss

1    amount.

2        So if there is a dispute as to whether this additional claim

3    of loss should be counted towards the final order of

4    restitution, we can certainly take that up in due course.  I'm

5    not -- I'm not going to accept the representation.  I don't

6    think Mr. Calhoun is asking me to accept it as final for this

7    additional amount, but the statute would afford them some

8    additional time to do -- to provide that.

9        MR. RENN:  Again, I disagree.  I mentioned subsection

10   (5), and the Court referenced it.  But, you know, again, looking

11   at the -- you know, the whole statute, 3664(a), "For orders of

12   restitution under this title, the court shall order the

13   probation officer to obtain and include in the presentence

14   report, or in a separate report, as the court may direct,

15   information sufficient for the court to exercise its discretion.

16   The report shall include" -- and then it goes through all the

17   things that should be in there.

18       Subsection (d)(1), "Upon the request of the probation

19   officer, but not later than 60 days prior to the date initially

20   set for sentencing, the attorney for the Government, after

21   consulting, to the extent practicable, with all identifiable

22   victims, shall promptly provide the probation officer with a

23   listing of the amounts subject to restitution."

24       Then we go to subsection (2).  "The probation officer shall,

25   prior to submitting the presentence report under subsection (a),

1    to the extent practical" -- and then goes and "provide notice to

2    the identifiable victims."  So there's no question this has to

3    be done before today.

4            THE COURT:  Except for subpart (5) then gives us

5    90 days after today for it to be clarified; correct?

6            MR. RENN:  If the victim's losses are not ascertained

7    by --

8            THE COURT:  Is that correct, Mr. Renn?  Is there a

9    90-day period after today by which we can clarify the specific

10   restitution amount?

11           MR. RENN:  Not unless you take care of the first part

12   of that, and that is, "if the victim's losses are not

13   ascertainable by the date that is 10 days prior to sentencing."

14   I got the email yesterday, and the probation officer may have

15   gotten it Monday.  That's not 10 days.  So you don't get to the

16   90 days unless you get to the condition precedent, and that is

17   10 days before sentencing.

18           THE COURT:  Okay.  I'm going to overrule your

19   objection on that issue for now and reserve judgment on whether

20   the restitution amount will be adjusted based upon the late

21   acquired information, and that can be taken up in the typical

22   motion practice to follow today.

23     The parties' plea agreement, if memory serves, has a

24   specific amount agreed upon; is that correct?

25           MR. CALHOUN:  It does, Your Honor.

1          THE COURT:  So this would just be an add on to that;

2    is that correct?

3          MR. CALHOUN:  Yes.

4          THE COURT:  If it is not properly documented, or if

5    the case law shows that your interpretation of 3664 is accurate

6    and they have missed what is essentially a binding deadline by

7    which victims of fraud crimes are foreclosed from receiving

8    otherwise mandatory restitution, then I'll so rule, but I'm not

9    going to make that determination now.  We will allow that issue

10   to play out.

11      Anything else with respect to the 3553(a) factors that we

12   should discuss at this time?

13         MR. RENN:  Yes, Your Honor.  Again, I was going

14   through these enhancements, not because I'm contesting that they

15   apply or don't apply --

16         THE COURT:  I understand.  But you had already done

17   that, and all I was saying was I heard your argument.

18         MR. RENN:  It was in response to the Government saying

19   that -- basically that the 22 months that was found as the

20   average was skewed in our favor somehow and that this was a

21   fraud that was different than other frauds.

22      I'm pointing out we got additional points -- actually, six

23   additional points for the offense conduct here, ten or more

24   persons, the authentication feature, and then last but not

25   least, this substantial risk of death or serious bodily injury.

1    So we got to a 19 and a Criminal History Category I, much higher

2    than a lot of the frauds that we see where it's just a fraud and

3    somebody comes in and embezzles.

4        So if we're down at a 16 minus 3 for acceptance of

5    responsibility, or if we're at 18 minus 3 for acceptance, those

6    skewed numbers would even be less than 22 months.  So for all

7    those reasons, we would ask for nothing greater than 22 months

8    but certainly ask the Court to consider a sentence of probation,

9    as permitted under the statute, and/or a split sentence of some

10   BOP time as well as home incarceration time as a condition of

11   supervised release.

12            THE COURT:  All right.  Would Mr. Martin wish to

13   address the court, which is of course his right?

14            THE DEFENDANT:  Yes, sir, Your Honor, just saying

15   sorry to the victims and to my peers.  I know I got a lot of

16   restitution to pay back.  So I would like to get out there as

17   soon as possible and start working so I can pay the restitution

18   back, sir.

19            THE COURT:  All right.  Thank you.

20        Anything further from the United States?

21            MR. CALHOUN:  No, Your Honor.

22            THE COURT:  Mr. Renn, anything further?

23            MR. RENN:  No, Your Honor.  Thank you.

24            THE COURT:  Are the parties then ready for me to state

25   the sentence?

1          MR. CALHOUN:  Yes, Your Honor.

2          MR. RENN:  Yes, Your Honor.

3          THE COURT:  First, let me address Mr. Renn's able and

4     compelling argument.  I think this is a close call.  And I do

5     believe that Mr. Renn has made an effective and compelling

6     argument, but I can't -- I just cannot agree, under the

7     circumstances -- the facts and circumstances of this case, that

8     a downward departure is appropriate here given the length and

9     the scope of the offenses and the circumstances surrounding

10    Mr. Martin's arrest.

11        I think -- although I am not responding to a specific

12    objection, there was a fair amount of discussion about the

13    appropriateness of the two-level enhancement under 3C1.2.  I

14    believe that it was appropriately applied based upon the facts

15    reported in the PSR.

16        Having then considered the arguments of counsel, the

17    advisory guidelines, having carefully reviewed the PSR and

18    considered the 3553(a) factors, I will now impose the following

19    sentence:

20        It is the judgment of the court that the defendant, Angel

21    Martin, is committed to the custody of the Bureau of Prisons for

22    a term of 30 months as to each of Counts 1 and 2 in the

23    indictment, which shall be served concurrently, for a total term

24    of 30 months.

25        Upon release, Mr. Martin shall be placed on supervised

1    release for a term of three years as to each of Counts 1 and 2,

2    which shall be served concurrently, for a total term of three

3    years.

4        While on supervised release, Mr. Martin shall abide by the

5    standard conditions of supervision adopted by the court as well

6    as the special conditions that have been detailed in Part G of

7    the PSR.  These include specific financial restrictions, drug

8    abuse treatment, and drug testing.  The U.S. Probation Office

9    will answer any questions that Mr. Martin may have regarding the

10   requirements of these conditions.

11       Mr. Martin is further required to pay a special penalty

12   assessment fee of $100 as to each count of conviction for a

13   total of $200.

14       It is further ordered that the defendant shall pay

15   restitution in the amount of $148,281.32, which may or may not

16   be further enhanced based upon late submissions by the

17   Government.  And Mr. Martin will be jointly and severally liable

18   with his codefendant for the restitution amount.  The interest

19   requirement there will be waived.  In light of that obligation

20   and his inability to pay, I will waive imposition of a fine as

21   well as the associated costs.

22       I have carefully considered the history and characteristics

23   of Mr. Martin.  His criminal history, as we have discussed, is

24   in Category I.  He graduated from high school and has a decent

25   work history, and these factors support a low end guideline

1    sentence.  He also has a demonstrated substance abuse issue, and

2    I have taken note of that.

3        I have also considered the nature and circumstances of the

4    offenses here.  This case involves the theft of mail and stolen

5    checks in significant amounts and a potentially dangerous set of

6    circumstances at the time of the defendant's arrest.

7        As outlined at the outset, the guidelines produce a total

8    offense level of 19 against a criminal history category of I,

9    resulting in a guideline range of 30 to 37 months' custody, a

10   fine range of 10,000 to 100,000, and a range of one to three

11   years of supervised release.

12       This sentence -- I conclude this low end guideline sentence

13   properly reflects the seriousness of these offenses.  It will

14   promote respect for the law and afford adequate general

15   deterrence.  And, further, it is sufficient but not greater than

16   necessary to comply with the purposes set forth in

17   Section 3553(a)(2).  It satisfies the applicable statutory

18   provisions and is consistent with the parties' plea agreement.

19   Are there any objections then to this sentence or the special

20   conditions which have not previously been raised?

21           MR. CALHOUN:  None from the United States.

22           MR. RENN:  No, Your Honor.

23           THE COURT:  Let's now talk about Mr. Martin's appeal

24   rights.  And, Mr. Calhoun, I believe the parties' plea agreement

25   contains an appeal waiver, does it not?

1          MR. CALHOUN:  Standard appeal waiver.

2          THE COURT:  And so, Mr. Martin, you may recall from

3    the time of your change of plea hearing we discussed how, in

4    exchange for the concessions made in your plea agreement, you

5    agreed to waive your right to appeal your guilty plea,

6    conviction, or the sentence that I just imposed here.

7       Now, these appeal waivers are generally considered valid,

8    but if you believe yours is invalid for any reason, you may

9    present that theory to the Court of Appeals.  You may also

10   appeal on the basis of either or both of the exceptions to your

11   appeal waiver.  Those, if you will recall, are a claim based

12   upon ineffective assistance of counsel or one based upon a claim

13   of prosecutorial misconduct.

14      Now, to begin an appeal, you must first file a notice of

15   appeal, and that must be done within 14 days of the entry of

16   judgment.  If you need the clerk's office to assist you in the

17   preparation of that notice, they will upon request do that.

18      If you cannot afford the filing fee, they will take your

19   request to waive that fee.  And if you cannot afford counsel on

20   appeal, you may ask that counsel be appointed to represent you

21   free of charge.  Do you understand the appeal rights that I've

22   outlined for you?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Mr. Renn, anything further with respect to

25   Mr. Martin's Rule 32 rights that we need to cover?

1          MR. RENN:  No, Your Honor.

2          THE COURT:  Anything else to take up with respect to

3    Mr. Martin's sentencing at this time?

4          MR. CALHOUN:  No, Your Honor.

5          MR. RENN:  Your Honor, Mr. Martin may not have

6    sufficient time, but we would ask for a recommendation for the

7    RDAP program.  He does have documented substance abuse issues,

8    as noted in the report.  And we would ask for a specific

9    recommendation to either the Bureau of Prisons facility at

10   Greenville, Illinois, or Milan, Michigan, which would be close

11   to his home and family.

12         THE COURT:  All right.  As to the first, I will -- I

13   agree with you that the PSR shows that he has a documented

14   substance abuse problem.  I will make a recommendation that he

15   be evaluated for participation in the Residential Drug Abuse

16   Program or any other appropriate substance abuse program

17   offered.

18       And as to location, I will recommend that they place him as

19   close as possible to his family in -- it is the Chicago area;

20   right?

21         THE DEFENDANT:  Yes.

22         MR. RENN:  That is correct, Your Honor.

23         THE COURT:  And as you know, I do not ask for specific

24   institutions.  And the reason for that is that I'm not given the

25   authority under the law to order the Bureau of Prisons to place

1   you in any specific facility or program.  So the Bureau of

2   Prisons follows judicial recommendations whenever possible.

3       And so the best way to do that, the most effective way, as I

4   understand it, is for me to recommend that it be a facility as

5   close as possible.  And then we'll make that as the second

6   priority, is that correct, Mr. Renn, after the RDAP

7   recommendation?

8               MR. RENN:  Yes, Your Honor.

9               THE COURT:  And so I don't know whether those two

10  institutions that Mr. Renn even mentioned even have the RDAP.

11  Not all of them do.  So that's a factor that I leave to them to

12  sort through, but I'll make the two recommendations.  Anything

13  else?

14              MR. CALHOUN:  No, Your Honor.

15              MR. RENN:  Nothing further.

16              THE COURT:  Thank you.

17      (Proceedings concluded at 2:18 p.m.)

18                    C E R T I F I C A T E

19      I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

20  THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

21

22

23      _____s/Dena Legg_____        ____November 22, 2023__
        Certified Court Reporter No. 20042A157      Date
        Official Court Reporter

24

25